UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSHUA EUGENE ROBINSON,

          Plaintiff,

v.                                  Case No. 3:25-cv-271-MMH-SJH

WAYNE WINBURN, et al.,

          Defendants.

_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Plaintiff, Joshua Eugene Robinson, who is currently housed at Santa Rosa Correctional Institution, is proceeding on a pro se Civil Rights Complaint under 42 U.S.C. § 1983 (Doc. 1; Complaint). He also filed a request to proceed as a pauper (Doc. 2).

In the Complaint, Robinson names the following individuals as Defendants in their individual and official capacities: (1) Classification Officer Wayne Winburn at Taylor Correctional Institution; (2) Assistant Warden Monroe Barnes at Columbia Correctional Institution (CCI); (3) Classification Officer A.L. Randall at CCI; (4) Colonel Jeffery K. Lindsey at CCI; (5) State Classification Office Member W. Russell at CCI; (6) Grievance Respondent John/Jane Doe at CCI; (7) Classification Officer Steven Schwartz at CCI; (8)

Assistant Warden C. Underhill at CCI; (9) Secretary's Representative T. Bowden; and (10) Florida Department of Corrections (FDOC) Secretary Ricky Dixon. See Complaint at 2-4. Robinson states that Defendants violated his First and Eighth Amendment rights and committed due process violations. Id. at 4.[1] In describing each Defendant's alleged actions, Robinson contends that Defendants violated FDOC rules and regulations as governed by the Florida Administrative Code. Id. at 5-6.

According to Robinson, on September 23, 2024, while housed at Taylor Correctional Institution, "[a]fter [he] successfully participated in the Master Roster Count in his assigned housing unit," he was being escorted to medical because he declared a medical emergency. Id. at 8. But Lieutenant Edwards "ordered the officer escorting [Robinson] . . . to take [Robinson] to confinement" instead of medical. Id.

On October 1, 2024, the FDOC transferred Robinson to CCI. Id. On October 8, 2024, "Defendant Schwartz delivered to [Robinson] a 'notice of close management review' [(CM)] referral." Id. The referral was a result of "Defendant Winburn fals[ely] claiming that [Robinson] is a 'member of a security threat group' and that [Robinson] was 'an active participant' with 22

---

[1] Robinson also cites 28 U.S.C. § 1331(a) (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction), but neither of those statutes independently create a cause of action.

other inmates in 'a riot or disturbance.'" Id. On October 11, 2024, Robinson attended an Institutional Classification Team (ICT) hearing, where Defendants Barnes, Randall, and Lindsey, "after acknowledging the fact that [Robinson] wasn't in the area of the alleged disturbance, . . . stated that [Robinson] should understand that their reasons for recommending [him] for CM level one is because Taylor C.I. wanted [him] placed on CM." Id. "On October 15, 2024[,] Defendant Russell also rejected the proof of [Robinson's] innocence and agreed with the I[]C[]T[] team members regarding Defendant Winburn's false CM referral [and] then approved [Robinson] for CM level 2." Id.

Robinson submitted two formal grievances and two grievance appeals related to his claims in this case. See id. at 17-24. Defendants Doe and Schwartz denied Robinson's first formal grievance and "refused to consider the evidence of [Robinson's] . . . innocence." Id. at 8; see id. at 18 (formal grievance response). Defendants Underhill and Schwartz returned without action Robinson's second formal grievance, and "refus[ed] to even consider [Robinson's] claims that [Defendant] Russell's CM 2 approval is a separate issue from that of the I[]C[]T[] team members['] CM level one recommendation, . . . and refused to consider the requested evidence of [Robinson's] innocence." Id. at 8; see id. at 20 (formal grievance response). Subsequently, Defendant

Dixon, through Defendant Bowden, denied Robinson's first grievance appeal "based on false reasonings and a false review of the evidence," and "ignored and refused to consider [Robinson's] requested review of the video, witnesses, and Master Roster Count Sheet Evidence that would have proved [Robinson's] innocence." Id. at 8; see id. at 22 (appeal response). Finally, on December 11, 2024, Defendant Dixon, through Defendant Bowden, returned without action Robinson's second grievance appeal and "refused any action on [Robinson's] claims that Defendant[] Russell['s] CM 2 approval placement was based on false statements and evidence." Id. at 9; see id. at 24 (appeal response).

Robinson lists his injuries as follows: he "has been placed in extended segregation" as a result of "Defendant Winburn's false report"; he "has been falsely labeled as a member of a security threat group"; he "was unable to contact his family for 4 months"; he "lost his above satisfactory status and good adjustment status"; and he is no longer eligible to be housed at an incentivized institution. Id. at 10. He requests that the Court "hold the Defendants liable," award him $50,000 in damages, remove him from segregation, restore his above satisfactory and good adjustment status, and remove his name from the security threat group. Id.[2]

---

[2] Robinson recently filed a separate civil rights case relating to the disciplinary report he received for participating in the riot. See No. 3:25-cv-113-MMH-PDB (M.D.

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). As to whether a complaint fails to state a claim on which relief may be granted, the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, and therefore courts apply the same standard in both contexts.[3] Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, under Eleventh Circuit precedent, to prevail in

---

Fla.). The Court dismissed that case on April 7, 2025. Robinson's Complaint in this case suffers from several of the same deficiencies.

[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

a § 1983 action, a plaintiff must show "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted); Porter v. White, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While not

required to include detailed factual allegations, a complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (alternation and internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 679. In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

In assessing the Complaint, the Court must read Robinson's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham, 654 F.3d at 1175. And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto

7

counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Alford v. Consol. Gov't of Columbus, Ga.</u>, 438 F. App'x 837, 839 (11th Cir. 2011)[4] (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 709).

Here, Robinson's Complaint is due to be dismissed for the following reasons. First, Robinson sues each Defendant in his or her individual and official capacity, but Robinson fails to state an official capacity claim. If an officer is sued under § 1983 in an official capacity, the claim is considered a claim against the entity for which the officer is an agent. <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991). Thus, suing Defendants in their official capacities is equivalent to suing the FDOC, but the FDOC is not a "person" within the meaning of § 1983. <u>Gardner v. Riska</u>, 444 F. App'x 353, 355 (11th Cir. 2011). Moreover, the FDOC is immune from § 1983 liability for damages. <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986). Although injunctive relief may be available against the FDOC, <u>Gamble v. Fla. Dep't of Health & Rehab. Servs.</u>, 779 F.2d 1509, 1511 (11th Cir. 1986), Robinson fails

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

to allege that any violation of his rights was caused by an FDOC custom, policy, or practice. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A] governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." (internal quotation marks and citations omitted)). Therefore, all official capacity claims are due to be dismissed.

Second, Robinson is not entitled to compensatory damages from Defendants in their individual capacities. Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." To satisfy § 1997e(e), a prisoner must assert a physical injury that is more than de minimis. Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir. 2015). Robinson does not allege that he suffered any physical injury. Thus, to the extent Robinson requests $50,000 in compensatory damages, his request will be dismissed.

Third, Robinson's request for release from CM is not properly raised in a civil rights action. Instead, such a request should be made in a habeas corpus petition. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) ("[W]hen a state

prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); Medberry v. Crosby, 351 F.3d 1049, 1053 (11th Cir. 2003) ("Under our precedent, it is proper for a district court to treat a petition for release from administrative segregation as a petition for a writ of habeas corpus because [s]uch release falls into the category of fact or duration of . . . physical imprisonment delineated in Preiser v. Rodriguez." (quotations and citation omitted)); see also Streeter v. Hopper, 618 F.2d 1178, 1181 (5th Cir. 1980)[5] ("[The p]laintiffs' original complaint, seeking release from the imposition of administrative segregation without due process, would be appropriately treated as a habeas corpus petition, requiring exhaustion of state judicial remedies.").

Fourth, to the extent Robinson attempts to raise a claim under § 1983 based on an alleged violation of Title 33, Florida Administrative Code, he cannot do so. A violation of prison policy, alone, is insufficient to state a claim. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (recognizing that prison regulations are "not designed to confer rights on inmates"); see also Taylor v.

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Adams, 221 F.3d 1254, 1259 (11th Cir. 2000) ("[F]ailure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."). As such, the Court will dismiss all claims based on an alleged violation of Title 33.

Fifth, Robinson fails to state a plausible claim for relief against Defendants Winburn, Barnes, Randall, Lindsey, and Russell for writing or approving the "false" report of CM. Robinson does not allege facts that would suggest the filing or approval of a "false" report for CM falls under the Eighth Amendment's prohibition against cruel and unusual punishment or the Fourteenth Amendment's Due Process Clause.

To state a claim that Robinson's conditions of confinement violated the Eighth Amendment, he must allege that Defendants were deliberately indifferent to conditions that were "sufficiently serious." Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) ("The 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement."). Conditions of confinement are sufficiently serious under the Eighth Amendment only if they are so extreme that they expose the prisoner to "an unreasonable risk of serious damage to his future health or safety." Id. at 1289. Allegations of merely harsh conditions do not state a claim under the Eighth Amendment. Id. Robinson's

allegations fall far short of stating a plausible Eighth Amendment claim regarding his placement or retention on CM.

As to Robinson's due process claim, the Court "examine[s] procedural due process questions in two steps." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted). First, the court "asks whether there exists a liberty or property interest which has been interfered with by the [s]tate[;]" and second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Id. Liberty interests may arise from either the Due Process Clause or state law. Meachum v. Fano, 427 U.S. 215, 225-27 (1976). In reviewing whether state law creates a liberty interest, the Supreme Court has directed that courts must focus on the nature of the deprivation at issue rather than search for a negative implication from mandatory language in prisoner regulations. Sandin, 515 U.S. at 483-84. Looking at the nature of the deprivation, the Sandin Court explained that state created liberty interests rising to the level of requiring Due Process protection generally will be limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (internal citations omitted).

The Eleventh Circuit has recognized that a prisoner can be deprived of his liberty in violation of due process in two ways:

> The first is when a change in a prisoner's confinement is so severe that it essentially exceeds the sentence imposed by the court. The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999) (internal quotations marks and citations omitted). Even liberally construing Robinson's allegations, he fails to state a plausible due process claim. He fails to allege a change in his confinement status that was "so severe that it essentially exceeds [his] sentence" or that he suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Id. Thus, Robinson's due process claim is due to be dismissed.

Sixth, "[s]upervisory officials are not vicariously liable under section 1983 for the unconstitutional acts of their subordinates." Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022); see Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Indeed, "[s]upervisory officials cannot be held vicariously liable under section 1983 for the actions of their subordinates unless the supervisor 'personally participates in the alleged unconstitutional conduct' or

13

'there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'" <u>Smith v. Deal</u>, 760 F. App'x 972, 975 (11th Cir. 2019) (quoting <u>Cottone</u>, 326 F.3d at 1360).

> There are three ways to establish a causal connection between a supervisor's actions and the unlawful conduct: 1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; 2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights"; or 3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." <u>Cottone</u>, 326 F.3d at 1360 (citations and quotations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotations omitted). This "standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." <u>Keith v. DeKalb Cnty., Ga.</u>, 749 F.3d 1034, 1048 (11th Cir. 2014).

<u>Dickinson v. Cochran</u>, 833 F. App'x 268, 272 (11th Cir. 2020). Robinson contends that Defendant Dixon, through Defendant Bowden, violated his rights by denying his grievance appeals. Only Defendant Bowden signed the appeal responses; Defendant Dixon did not. <u>See</u> Complaint at 22, 24. Robinson does not allege that Defendant Dixon was personally involved in or otherwise causally connected to any alleged denial of his rights. Therefore, insofar as

Robinson is attempting to hold Defendant Dixon liable for the alleged unconstitutional actions of others, such claim fails.

Finally, to the extent Robinson asserts that Defendants Doe, Schwartz, Underhill, and Bowden violated his constitutional rights by denying or returning without action his grievances, he fails to state a claim. Not addressing a grievance in the manner a prisoner would like, without more, does not render an individual liable for the underlying constitutional violation. See Jones v. Eckloff, No. 2:12-cv-375-FtM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013)[6] ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (collecting cases)).

There are circumstances in which a defendant's failure to act in response to an inmate's grievances may result in a constitutional violation. See Goebert v. Lee Cnty., 510 F.3d 1312, 1327-29 (11th Cir. 2007) (finding that a defendant's lack of action in response to an inmate's written complaint amounted to deliberate indifference and the delay attributable to the

---

[6] Although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

15

defendant's deliberate indifference may have caused the inmate's injury). In Goebert, a pregnant pretrial detainee submitted a medical complaint form, wherein she requested to see an obstetrician or a doctor outside of the county jail. 510 F.3d at 1318. The plaintiff alleged in her complaint that she had leaked amniotic fluid for approximately nine days, she had not felt any movements from her baby, and she had a history of miscarriages. Id. The defendant, a facility commander, responded that medical could arrange an appointment at her expense, despite the plaintiff noting in her complaint that medical staff had "ignored her daily requests for aid and had already failed to set up an appointment for her with an outside obstetrician." Id. at 1328. In finding that the defendant was not entitled to summary judgment, the Eleventh Circuit noted that the inmate's written complaint contained sufficient information to provide the defendant with subjective knowledge of her serious medical need, and his failure to take action in response to her complaint because he did not believe her amounted to deliberate indifference. Id. at 1327-28.

But the facts of this case are distinguishable from those in Goebert. The defendant in Goebert completely disregarded his duty to investigate the inmate's "self-evident" and time-sensitive serious medical complaints because he "automatically disbelieve[d] all inmate statements about medical care." Id.

16

at 1328, 1329. Here, Defendants Doe, Schwartz, Underhill, and Bowden considered and addressed Robinson's grievances. See Complaint at 17-24. Specifically, Schwartz and Doe advised Robinson that "[a]ll video and evidence was reviewed and taken into consideration for [his] CM evaluation" and "[t]here was enough information and evidence provided in the investigation to connect [Robinson] with the riot[.]" Id. at 18. On appeal, Bowden advised Robinson that the response he received at the institutional level was appropriate, the ICT "recommendation and Statewide Classification Office's (SCO) decision [were] consistent" with the regulations, and his "placement in [CM] has been through [his] own behavior." Id. at 22. Additionally, Schwartz, Underhill, and Bowden returned without action Robinson's related formal grievance and appeal, id. at 20, 24, and Bowden informed Robinson that the responses he received to his prior grievances "address the decision for [his] placement in [CM] to include [CM] II." Id. at 24. Robinson simply disagrees with the actions of these Defendants in addressing his formal grievances and appeals, but he fails to allege facts to support a plausible inference that Defendants' actions violated his federally-protected rights.

Moreover, inmates have "no constitutionally protected liberty interest in access to the prison's grievance procedure." Moore v. McLaughlin, 569 F. App'x 656, 659 (11th Cir. 2014) (citing Bingham, 654 F.3d at 1177; Grayden v.

17

Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)); see Charriez v. Sec'y, Fla. Dep't of Corr., 596 F. App'x 890, 895 (11th Cir. 2015) (finding the district court did not err in dismissing the plaintiff's claim that the defendants "had violated his constitutional due-process rights by failing to take corrective action during the appeal of the suspension of his visitation privileges[ b]ecause the prison grievance procedure does not create a protected liberty interest"); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (finding the plaintiff failed to state a claim because he merely "alleged that his prison grievances were either ignored or wrongly decided or that prison officials did not properly follow the prison's own grievance procedures"). Thus, to the extent Robinson alleges that any Defendant denied him due process in the grievance procedure, such allegations fail to state a claim.

In light of the foregoing, this case will be dismissed without prejudice for Robinson's failure to state a claim. Robinson may refile his claims under 42 U.S.C. § 1983 with factual allegations sufficient to support a claim for relief if he elects to do so. Notably, pro se litigants are subject to the same law and rules of court that govern other litigants who are represented by counsel. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989). All filings with the Court must be made in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

Accordingly, it is

**ORDERED**:

1.    This case is **DISMISSED without prejudice**.

2.    The **Clerk of Court** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

3.    The **Clerk of Court** shall send Robinson a civil rights complaint form and an application to proceed in forma pauperis (prisoner filings) form. If Robinson chooses to refile his claims, he may complete and file the appropriate forms. He should not include this case number on any form, as the Clerk will assign a new case number upon receipt. In initiating such a case, Robinson should either file a fully completed application to proceed in forma pauperis or pay the $405 filing fee.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of May, 2025.

MARCIA MORALES HOWARD
United States District Judge

JAX-3 4/30
c:
Joshua Eugene Robinson, #P18780

19